IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

TEDDY FOWLER, *et al.*,                    *

    Plaintiffs,                    *

vs.                                        *

                                 CASE NO. 3:23-CV-62 (CDL)

GEORGIA RENEWABLE POWER LLC, *et* *
*al.*,
                                           *

    Defendants.                    *

_____            *

### O R D E R

    Defendants own and operate a biomass power generation plant in Madison County, Georgia. Plaintiffs are current or former owners and occupiers of real property near the plant. Plaintiffs contend that the plant causes excessive noise, vibrations, light, odor, smoke, and soot which adversely impact their properties. They assert claims against Defendants for nuisance and negligence. Presently pending before the Court is a motion to exclude Plaintiffs' real estate appraisal expert, Kenneth Cantrell. As discussed below, that motion (ECF No. 41) is denied. Also pending before the Court are Defendants' summary judgment motions (ECF Nos. 39, 40, 43). Those motions are also denied except as to a handful of issues that are explained below.

### SUMMARY JUDGMENT STANDARD

    Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## EVIDENTIARY DISPUTES

Before the Court recounts the facts, the Court must determine whether it may consider two pieces of evidence.

First, Plaintiffs object to the affidavit of Christina Baxter, a records clerk for Madison County (ECF No. 39-8). Plaintiffs contend that her affidavit should be excluded and that she should not be permitted to testify at trial because Defendants did not disclose Baxter as a potential witness until after the close of discovery. If a party fails to identify a witness as required by Federal Rule of Civil Procedure 26(a) or (e), then that party may not rely upon the witness's testimony "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, Defendants contend that they disclosed Baxter the day after they learned of her existence and that their

supplemental disclosure should thus be considered timely under Federal Rule of Civil Procedure 26(e). Preliminarily, the Court is perplexed as to why neither party sought the county zoning records sooner in the discovery period. Nevertheless, the Court finds that Defendants timely supplemented their disclosures to identify Baxter as a potential witness, and she shall not be excluded as a witness. Her affidavit may be considered in deciding the present summary judgment motion. If Plaintiffs wish to take Baxter's deposition before trial, they may do so.

Second, Plaintiffs object to a 2015 report that was prepared for GRP Madison, LLC. Veolia Mot. Summ. J. Ex. H, Brownfield Report (June 19, 2025), ECF No. 39-9. Plaintiffs object in part because the report was not produced until the day before discovery closed and in part because Defendants did not point to any witness to authenticate it. As to the late disclosure, the document was produced before the close of discovery, and Plaintiffs did not seek leave of the Court to conduct any additional discovery regarding the document. The Court declines to exclude the document based on its allegedly late disclosure. Regarding the authentication issue, the Court may consider materials at summary judgment if the proponent can "explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. Defendants contend that the 2015 report is a business record and that even if it is not self-authenticating,

several of their witnesses can testify about matters contained in the document. The Court is satisfied that the 2015 report and/or its contents can be presented in admissible form. The Court thus declines to exclude it. Before trial, Defendants shall notify Plaintiffs which previously disclosed witnesses have knowledge of the 2015 report; if Plaintiffs wish to depose those witnesses about the 2015 report before trial, they may do so.

## FACTUAL BACKGROUND

Georgia Renewable Power, LLC and GRP Madison, LLC ("GRP Defendants") own a biomass power generation plant ("Madison Plant") in Madison County, Georgia. Veolia Energy Operating Services, LLC operates the Madison Plant. The Madison Plant generates electricity by burning biomass fuel, including wood chips, to heat water and produce steam that turns a turbine generator. The GRP Defendants purchased the property for the Madison Plant in 2015. After construction, the Madison plant became operational for a commissioning period in 2019, and Veolia assumed responsibility for operating and maintaining the Madison Plant on December 14, 2019. The Madison Plant is subject to an Air Quality Permit that limits the permitted particulate matter emissions from the plant. It is undisputed that the Madison Plant recently received violation notices from the Georgia Department of Natural Resources, Environmental Protection Division, for

allegedly violating the Air Quality Permit.[1]  It is undisputed that the Madison Plant does not operate in violation of a noise ordinance and that Defendants have taken actions since 2019 to reduce noise and light emitted from the Madison Plant.

Plaintiffs live (or lived) in homes on properties that are more than half a mile, but less than two miles, from the Madison Plant.  Plaintiffs admit that the site of the Madison Plant is zoned industrial, but they contend that the area around the Madison Plant is primarily residential.  The only evidence that the parties pointed to regarding the area's zoning is a partial zoning map that contains no explanation of the zoning codes.[2]  Veolia Mot. Summ. J. Ex. F, Madison Cnty. Zoning Map (undated and incomplete), ECF No. 39-7.  Plaintiffs do not object to the partial map, so the Court will consider it, even though it has unexplained blank spaces and appears to show only the Madison Plant site and four of the ten Plaintiffs' parcels.

The only industrial site on the map is the Madison Plant site.  All the properties that are shown on the map which are directly adjacent to the Madison Plant site are zoned "A1," agricultural.[3]

---

[1] Defendants deny that they *actually* violated the permit, but they acknowledge that the EPD has issued a violation notice and is in the process of investigating the alleged violations.

[2] Defendants also rely on the 2015 report that was prepared for GRP Madison, LLC, but that report only describes the area immediately surrounding the Madison Plant site in broad, general terms and does not address the zoning classification of other nearby properties.

[3] The zoning map does not show the property directly south of the Madison Plant site.

*Id.*  The agricultural parcel to the north of the Madison Plant site is bordered by Highway 72.  There is a residential neighborhood just on the other side of the highway, north and northeast of the Madison Plant.  *Id.*  Defendants do not dispute that all but four of the other properties shown on the map near the Madison Plant site are either A1 or A2 (agricultural with a residence), AR (rural residential), or R1 (single family residential).  The remaining four properties are zoned B, business.

After the Madison Plant began operating in 2019, Defendants used loud machines to manage fuel; had loud, high-pitched beeping alarms on plant equipment; used lights that lit up the structure at night; and had equipment that made a loud buzzer noise.  When there is a steam release at the Madison Plant, it makes a very loud noise, often in the middle of the night.  These noises occur even though silencers were installed after the Madison Plant began operating.  A Veolia employee stated that the plant "constantly" emitted "flugas [from] combustion of the fuel."  Rock Dep. 21:19-20; 22:8-10, ECF No. 60 (testifying that the plant emits "smoke" constantly); Rock Dep. Errata, ECF No. 68 at 1 of 2 (stating that witness used the word "smoke" in error and that the correct word is "flugas").[4]  According to Plaintiffs' noise engineering expert,

---

[4] Defendants did not define "flugas."  According to the Merriam-Webster Dictionary, flue-gas is "the mixture of gases resulting from combustion and other reactions in a furnace, passing off through the smoke flue," while smoke is "the gaseous products of burning materials especially of organic origin made visible by the presence of small particles of

the Madison Plant's noise is incompatible with its rural residential surroundings. He also opined that although mitigation efforts have reduced the Plant's impact, it is still incompatible with its rural residential surroundings. There is no dispute for summary judgment purposes that Plaintiffs have experienced noise, light, odor, and/or smoke (or flue-gas) from the Madison Plant at their properties, which they assert interferes with their use and quiet enjoyment of their properties.[5] Although several Plaintiffs have complained about the issues to Defendants, the problems persist.

Plaintiffs originally filed ten separate actions in the Superior Court of Madison County, Georgia. Defendants removed the actions based on diversity jurisdiction because Plaintiffs are Georgia citizens, Defendants are Delaware limited liability companies whose members are not Georgia citizens, and the amount in controversy in each action exceeded $75,000. The Court consolidated the ten actions. Order to Consolidate (July 10, 2023), ECF No. 10.

---

carbon." *Flue Gas*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/flue%20gas (last visited Mar. 14, 2025); *Smoke*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/smoke (last visited Mar. 14, 2025).

[5] Defendants' expert stated that there were no noxious odors from the Plant when she did an odor assessment in March of 2024. This evidence does not establish that the Plant never emitted such odors.

DISCUSSION

Plaintiffs assert claims against Defendants for nuisance and negligence, claiming they suffered injury to property in the form of diminished value, as well as loss of use and enjoyment of their properties.[6]  They also seek punitive damages and litigation expenses, including attorney's fees, under O.C.G.A. § 13-6-11. Defendants argue that they are entitled to summary judgment on all of Plaintiffs' claims.  To create a genuine fact dispute on their claim for diminution in value damages, Plaintiffs rely on the expert testimony of a real estate appraiser.  Defendants argue that the Court should exclude the appraiser's testimony and that Plaintiffs cannot prove their claims without the testimony.  Thus, the Court begins its analysis with the motion to exclude the appraiser.

## I.   Defendants' Motion to Exclude Kenneth Cantrell

Defendants contend that Plaintiffs' real estate appraisal expert should not be permitted to offer opinion testimony under Federal Rule of Civil Procedure 702.  "A witness who is qualified

---

[6] Plaintiffs do not assert any claims for personal injuries caused by nuisance or negligence. Defendants' summary judgment motions  are moot as to any claims "sounding in personal injury," including any claims that Plaintiffs suffered physical injuries based on the burning of creosote-treated railroad ties.  The Court hastens to add that this ruling does not impact the damages Plaintiffs may recover if they prove their nuisance claims.  One element of nuisance damages is "discomfort and annoyance," which includes "discomfort, loss of peace of mind, unhappiness and annoyance." *Oglethorpe Power Corp. v. Est. of Forrister*, 774 S.E.2d 755, 767 (Ga. Ct. App. 2015) (quoting *City of Columbus v. Myszka*, 272 S.E.2d 302, 305 (Ga. 1980).  Defendants did not clearly move for summary judgment on this element of damages.

as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . if the proponent demonstrates to the court that it is more likely than not that" his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," his "testimony is based on sufficient facts or data," his "testimony is the product of reliable principles and methods," and his "opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Before the Court may admit expert testimony, the Court "must find that it is properly grounded, well-reasoned, and not speculative." Fed. R. Evid. 702 advisory committee's note to 2000 amendments. The Court's goal is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Kenneth Cantrell is a certified real estate appraiser who has been performing real estate appraisals in Georgia for more than thirty years. Plaintiffs hired Cantrell to determine the diminution in Plaintiffs' property values caused by noise emitted from the Madison Plant. Defendants do not challenge Cantrell's

qualifications. Instead, they maintain that his testimony is not supported by sufficient facts or data and that he did not use a reliable methodology.

Cantrell prepared an appraisal report for each of Plaintiffs' properties using the sales comparison approach. He asserts that his work is in accordance with the Appraisal Institute's Uniform Standards of Professional Appraisal Practice and the Appraisal Institute's Code of Professional Ethics and Standards of Professional Appraisal Practice. Defendants have three primary criticisms of his methodology. First, Defendants argue that Cantrell did not comply with the professional standards on the verification of sales data for comparable properties. In response, Plaintiffs pointed to evidence that Cantrell delegated this task to his associate and that she appropriately verified the sales data. Second, Defendants criticize the geographic distance between the comparable properties and the appraised properties, but as Plaintiffs explain, the rural nature of the properties justifies the use of such comparables under applicable appraisal standards. Third, Defendants contend that Cantrell improperly relied on a biased report regarding the impact of the Madison Plant. Based on the Court's review, that study was a factor he considered in determining the size of the area impacted by the Madison Plant, and the Court finds that he could consider such information in arriving at his appraisal opinions. The criticisms

of Plaintiffs' appraisal evidence go to the weight of Cantrell's testimony, not its admissibility. Based on the present record, the Court finds that Plaintiffs have demonstrated that it is more likely than not that Cantrell's testimony is based on sufficient facts and data, is the product of reliable appraisal principles, reflects a reliable application of the appraisal principles to the facts of the case, and will help the trier of fact. Accordingly, the motion to exclude Cantrell (ECF No. 41) is denied.

## II.  Plaintiffs' Nuisance Claims

The Court now turns to the heart of Defendants' summary judgment motion. Defendants maintain that because the Madison Plant operates consistent with the applicable land use plan and regulatory requirements, the impact of its operations on its neighbors can never be a nuisance as a matter of law. Defendants' argument fails because genuine factual disputes exist as to whether the manner in which Defendants operate the Madison Plant produces a nuisance notwithstanding compliance with zoning and permit requirements.

In Georgia, a "nuisance is anything that causes hurt, inconvenience, or damage to another *and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance.*" O.C.G.A. § 41-1-1 (emphasis added). "The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary,

reasonable man." *Id.* Plaintiffs assert that the Madison Plant is a nuisance because it emits excessive noise, light, odors, smoke, and soot. Defendants respond that there can be no nuisance as a matter of law here because the Madison Plant site was zoned for industrial use and the plant operates pursuant to the required air permit.[7]

Defendants essentially contend that they are immune from a nuisance claim, citing a line of cases which state: "that which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance." *Kempton v. S. Flavor Real Est., L.P.*, 866 S.E.2d 862, 863 (Ga. Ct. App. 2021) (quoting *McBrayer v. Governors Ridge Off. Park Ass'n*, 860 S.E.2d 58, 62 (Ga. Ct. App. 2021)). From these cases, Defendants extract a rigid rule that protects persons from nuisance claims if (1) the conduct creating the alleged nuisance occurs on a site that is zoned for such activity under the local land use plan, and (2) the activity is conducted in compliance with all applicable licenses and permits. *See, e.g.*, *Kempton*, 866 S.E.2d at 864 (finding no nuisance as a matter of law where a commercial greenhouse operated in compliance with its

---

[7] Defendants also point out that between 1989 and 2008, there was a facility on the Madison Plant site that manufactured engineered wood products. Defendants contend that the prior operators committed several environmental infractions, but they did not point to evidence that the prior facility was a nuisance to the surrounding neighbors. Even if they had, Defendants did not point to any authority that a prior, abated nuisance precludes the neighbors from pursuing a nuisance claim against a new owner who constructs a new facility with new issues.

permits in a rural area that was zoned for agricultural operations); *Effingham Cnty. Bd. of Comm'rs v. Shuler Bros.*, 595 S.E.2d 526, 528 (Ga. Ct. App. 2004) (finding no nuisance as a matter of law where a chip mill operated in a legal manner in a location that was specifically rezoned for the operation of a chip mill). This over-broad principle, however, is narrowed by a plain reading of the Georgia nuisance statute and a careful consideration of prior Georgia Supreme Court precedent.

The applicable statute clearly states "the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. Although some of the Georgia appellate decisions create confusion as to the meaning of this language, a plain reading of it can produce only one reasonable interpretation. In colloquial terms, just because you have the government's permission to do what you are doing does not mean you can do it any way you want. You must still consider the impact of your conduct on your neighbors. To hold that mere compliance with a land use plan and regulatory permits immunizes you as a matter of law from a nuisance claim requires one to ignore this unambiguous statutory provision. This does not mean that compliance with government land use and regulatory requirements is irrelevant to the nuisance analysis. But regulatory compliance is not dispositive.

The Georgia Supreme Court, in fact, has recognized this distinction.  It observed nearly forty years ago that "[n]othing that is legal in its erection can be a nuisance *per se*." *Galaxy Carpet Mills, Inc. v. Massengill*, 338 S.E.2d 428, 429 (Ga. 1986) (alteration in original) (quoting *Bacon v. Walker*, 77 Ga. 336, 336 (1886)).  But, it "may, by reason of its location in a residential area, cause hurt, inconvenience, and damage to those residing in the vicinity and become a nuisance per accidens (a nuisance by reason of circumstances and surroundings)."  *Id.* (quoting *Griffith v. Newman*, 123 S.E.2d 723, 726 (Ga. 1962)); *see also Kempton*, 866 S.e.2d at 863-64 (recognizing that a lawful business may become a nuisance *per accidens* by reason of its location); *see also, e.g.*, *Superior Farm Mgmt., L.L.C. v. Montgomery*, 513 S.E.2d 215, 218 (Ga. 1999) (affirming injunction halting construction of a commercial hog breeding facility in a residential area even if they got a permit from the state environmental agency); *Massengill*, 338 S.E.2d at 429 (affirming jury verdict in favor of homeowners on their nuisance claim where a carpet dye plant in a predominately residential area obtained a permit from the state environmental agency and began using coal-fired boilers that emitted soot, ash, and loud noises); *Poultryland, Inc. v. Anderson*, 37 S.E.2d 785, 791 (Ga. 1946) (permitting nuisance *per accidens* claim against hog and chicken feed plant near businesses and residences); *cf. Weller v. Blake*, 726 S.E.2d 698, 702 (Ga. Ct. App. 2012) (finding genuine

fact dispute on whether legally constructed outdoor fireplace was a nuisance to neighbors who could smell the smoke inside their home).

While Defendants had the right to operate a biomass power generation facility at this site under the applicable land use regulations and permits, compliance with those regulatory requirements does not provide them with an automatic guaranteed safe harbor to disregard the legitimate rights of their neighbors to enjoy the use of their property without unreasonable interference. Land use and regulatory permitting may tell an applicant what they may do; but they don't give the operator immunity to do it however they wish, particularly if their use is detrimental to the property rights of others. *See, e.g.*, *Massengill*, 338 S.E.2d at 429 (affirming jury verdict in favor of homeowners on their nuisance claim where a carpet dye plant in a predominately residential area obtained a permit from the state environmental agency and began using coal-fired boilers that emitted soot, ash, and loud noises); *see also* O.C.G.A. § 41-1-1 ("[T]he fact that the act done may otherwise be lawful shall not keep it from being a nuisance.").

Although the specific site of the Madison Plant was industrial, the present record would permit a reasonable factfinder to conclude that nearly all the surrounding property within two miles was either residential or agricultural with a

residence.  Certainly, Defendants were required to take this into consideration in determining the manner in which they should operate the Madison Plant.  A reasonable factfinder could conclude that Defendants have created a nuisance by operating the Madison Plant in a manner that produces an unreasonably noisy, smoky, smelly byproduct with unreasonably bright lights at night, all of which substantially interferes with the reasonable enjoyment of Plaintiffs' property.  If the evidence demonstrates that Defendants operated the Madison Plant consistent with the land use and regulatory requirements *and* in a manner that mitigated the substantial adverse impacts on their neighbors to the extent feasible, then a jury could conclude that Defendants acted reasonably under the circumstances and should not be liable for nuisance.  But the present record does not demand this finding as a matter of law, and thus summary judgment is not appropriate.

The Court hastens to add that it does not find that Georgia law requires such a defendant to mitigate all possible harmful impacts of its lawful operation.  It requires a defendant to act reasonably in the context of having been permitted to conduct its operation in the particular approved location.  Disgruntled neighbors who may believe that the operation should not be permitted to continue under any circumstance cannot be allowed to accomplish through the nuisance door what they could not accomplish through the political/zoning door.  If the type of activity is

permitted on that site, the wisdom of that type activity being conducted there cannot be second-guessed through a nuisance lawsuit. But having obtained permission to conduct that type of activity at a given site, the operator must conduct that permitted activity in a reasonable manner as it relates to its neighbors. Because genuine factual disputes exist on these issues, summary judgment is not appropriate.[8]

Having found that a genuine factual dispute exists on whether Defendants created and maintained a nuisance, the only other issue that remains is whether a factual dispute exists as to whether Plaintiffs have been damaged by the nuisance. As previously noted, a reasonable factfinder could conclude based on Cantrell's testimony that Plaintiffs suffered damage to their property in the form of diminished value. Based on his appraisal of their properties, he opines that their property is worth less than it would be without the noise emitted from the Madison Plant. Plaintiffs have also presented evidence that they suffered loss of use and enjoyment of their properties.

Defendants argue that if there are genuine fact disputes on whether the Madison Plant is a nuisance, the Georgia "right to

---

[8] A separate independent reason exists for the denial of summary judgment as to Plaintiffs' smoke/odor/ash/soot emission claims. There is evidence from which a jury could conclude that the Madison Plant violated its Air Quality Permit and was thus not operating lawfully. At trial, it will be important for Plaintiffs to tie the alleged permit violations to the conduct that they claim constitutes the compensable nuisance.

farm" statute applies such that the Madison Plant cannot be considered a nuisance after it was in operation for two years. *See* O.C.G.A. § 41-1-7(d) ("No . . . agricultural support facility shall be or shall become a nuisance . . . if the facility or operation has been in operation for two years or more . . . [unless] a nuisance results from the negligent, improper, or illegal operation of any such facility or operation.").

Even if electricity generated by burning wood chips is a "forest product" within the meaning of the statute, such that the Madison Plant is an "[a]gricultural support facility," this defense to a nuisance action "shall not apply when a nuisance results from the negligent, improper, or illegal operation of any such facility or operation." *Id.* § 41-1-7(b), (d) As discussed above, there are genuine fact disputes on whether the Madison Plant was operated lawfully, properly, and with reasonable care. Thus, genuine fact disputes preclude summary judgment on this defense.

### III. Plaintiffs' Negligence Claims

In addition to their nuisance claims, Plaintiffs allege separate negligence claims. Defendants seek summary judgment on these claims arguing that no evidence exists that they breached any duty they owed to Plaintiffs. Defendants cannot seriously dispute that a property owner owes a duty not to materially

interfere with the rights of neighboring property owners.[9] They contend, however, that there is no evidence that they breached any duty. As discussed above, Plaintiffs pointed to evidence that the Madison Plant's noise is incompatible with its rural residential surroundings, that the incompatibility easily could have been foreseen, and that the Plant continues to be operated in a manner that makes it remain unreasonably noisy for its rural residential surroundings, without reasonable noise controls. They also pointed to evidence from which a jury could conclude that the Plant was operated in violation of its Air Quality Permit. The existence of genuine factual disputes precludes summary judgment on the negligence claims.

## IV. Claims of Individual Plaintiffs

In addition to their global motion for summary judgment as to all of Plaintiffs' claims, Defendants specifically identify issues that should be decided in their favor as a matter of law as to the following individual claims.

Vibration Claims. Several Plaintiffs claimed in their complaints that their properties were affected by vibrations caused by the Madison Plant. Defendants moved for summary judgment on this aspect of their claims because the Plaintiffs either did

---

[9] Veolia argues that it had no duty to Plaintiffs, but it pointed to no authority that it is exempt from the common law duty an owner or occupier of property has not to interfere with the property rights of its neighbors.

not experience vibrations at all or did not point to evidence that any vibrations adversely affected them or their property. The Court grants summary judgment on this issue. Plaintiffs may not pursue claims based on vibrations.

Mack and Cheryl Adams (3:23-cv-64). Defendants contend that the Adamses cannot prove that ash and soot from the Plant came onto their property. Plaintiffs pointed to evidence that Mrs. Adams got ash on her shoes and socks which could have come from no source other than the Madison plant. Adams Dep. 53:8-22, 55:10-13, 55:24-56:7, ECF No. 54-6. A genuine factual dispute exists on this issue, and therefore, summary judgment is denied.

Ronald and Paulette Brown (3:23-cv-65). Defendants assert that the Browns cannot prove that they suffered any physical injuries because of smoke from the Madison Plant because they testified that the smoke does not impact their daily lives. The Court finds that these admissions prevent the Browns from arguing that any "discomfort and annoyance" nuisance damages can be based on smoke from the Plant. It is not clear from the present record whether the Browns assert that their property value is diminished because of the smoke, and Defendants did not clearly move for summary judgment on such a claim. That issue therefore remains for jury resolution.

Curtis Goodin and Leigh Ann Jones (3:23-cv-67). Defendants seek summary judgment on any claim that odors from the Madison

Plant continued after August 2020. But the evidence Defendants cited does not establish that odors from the Madison Plant stopped affecting Goodin, Jones, and their property in August 2020. The Court denies summary judgment on this issue.

William and Lisa Taylor (3:23-cv-69). First, Defendants point out that the Taylors admit that their property was not affected by odors from the Madison Plant after August 2020. Since there is no dispute that this aspect of the alleged nuisance has been abated as to the Taylors' property, Defendants are entitled to summary judgment on the Taylors' claims that they suffered a diminution in value to their property based on odors because diminution damages are not available for an abated nuisance. This ruling does not mean that the Taylors cannot recover for "discomfort and annoyance" caused by the odors up to August 2020. Second, Defendants seek summary judgment on the Taylors' claims for costs associated with the 2018 construction of a barn/wedding venue on their property. The Taylors claim that they cannot host weddings on their property because of the Madison Plant. But the Taylors admit that they never had a wedding on the property, and they did not point to any authority that would authorize them to recover a business loss for a business that never operated. Defendants are therefore entitled to summary judgment on the Taylors' claim for construction costs.

**V.    Plaintiffs' Punitive Damages and Litigation Expenses Claims**

Plaintiffs seek punitive damages and litigation expenses, including attorney's fees.  Defendants contend that there is no evidence from which a jury can conclude that they acted with the requisite intent for punitive damages or an award of litigation expenses.  "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Litigation expenses under O.C.G.A. § 13-6-11 may only be awarded "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11.

Georgia courts have recognized that punitive damages are authorized for a "claim of continuing nuisance," and failing to heed persistent complaints about a continuing nuisance may amount to bad faith justifying attorneys' fees. *Tyler v. Lincoln*, 527 S.E.2d 180, 183 (Ga. 2000).  In *Tyler*, for example, the Georgia Supreme Court reversed the grant of summary judgment in favor of developers on the plaintiffs' claims for punitive damages and litigation expenses because there was evidence that "the developers had not taken adequate soil erosion control measures"

within their development; that the development's "drainage system was designed in a manner that would increase the runoff of storm water onto" the plaintiffs' property; and that the plaintiffs repeatedly asked the "developers to correct the problems, but failed to get them to take any action to remedy the situation and the ongoing damage." *Id*. Here, there is evidence from which a jury could conclude that Defendants did not take adequate measures to control noise, light, and air quality issues from the Madison Plant, that several Plaintiffs repeatedly asked Defendants to fix the problems, and that Defendants never fixed the problems for some Plaintiffs. The Court thus denies Defendants' summary judgment motion on punitive damages and litigation expenses.

CONCLUSION

The Court denies Defendants' motion to exclude Kenneth Cantrell (ECF No. 41) and denies Defendants' summary judgment motions (ECF Nos. 39, 40, 43) except as to the following narrow issues: none of the Plaintiffs may pursue claims based on vibrations; the Taylors may not pursue claims based on any alleged diminution in value to their property because of odors from the plant; and the Taylors may not pursue damages based on the costs to construct a wedding venue on their property that they never operated.

IT IS SO ORDERED, this 15th day of March, 2025.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA